JEROME RAPOPORT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rapoport v. Commissioner
Docket No. 19839-80.
United States Tax Court
T.C. Memo 1983-657; 1983 Tax Ct. Memo LEXIS 125; 47 T.C.M. (CCH) 205; T.C.M. (RIA) 83657; October 31, 1983. Jerome Rapoport, pro se. Robert Alter, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: This case was assigned to and heard by Special Trial Judge Fred R. Tansill, pursuant to section 7456(c) [1] and Rules 180 and 181. [2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE TANSILL, Special Trial Judge: Respondent *127 determined a deficiency in the amount of $9,313 in petitioner's 1973 Federal income tax. The narrow issue for decision is whether a cash payment of $15,000, received by petitioner in March 1973 from a wholly owned corporation, constituted a dividend taxable to petitioner, or was a loan to him. Some of the facts have been stipulated pursuant to Rule 91 and are found accordingly. Petitioner, a law school graduate, resided in New York City, New York, during all relevant times and filed a separate return for 1973. In November 1972, Citizens Realty and Development Corporation (Citizens) was incorporated by petitioner under the laws of the State of New York to engage in business real estate finance and development. Petitioner was the sole shareholder and chief executive officer of Citizens, which reported its Federal income taxes on a cash basis using a fiscal year ending April 30. A Form 1120 was filed by Citizens for the short period from November 1972 to April 1973. Citizens' fiscal 1973 return lists as an asset stock in Park 58 Corporation, a housing cooperative. That stock represented petitioner's interest in the cooperative in which he resided and which he valued at $115,000. *128 He had purchased this stock in 1971 for $40,000. He attempted to assign ownership thereof to Citizens in November 1972. The board of directors of the cooperative refused to permit the transfer, however, and petitioner was so apprised in February 1973. Nonetheless, he subsequently reflected that transfer on the books of Citizens and instructed the auditor to show the transaction as a capital contribution of $100,000 and a loan back from Citizens to petitioner in the amount of $15,000. No part of this transaction ever actually occurred. During 1973, several transfers of money between petitioner and Citizens did occur. [3] Excluding the recorded transaction described above, the actual 1973 transfers which took place were as follows (as shown on Citizens' books in the officer's loan account): Transfers from
Transfers from
Citizens to
Petitioner to
Balance at
Date
Petitioner
Citizens
Citizens
Jan. 1973
$25,000
$25,000 Feb. 1973
$23,000
2,000 Mar. 1973
15,000
(13,000)
Apr. 1973
2,000
7,500
(7,500)
Sept. 1973
14,000
(21,500)
Sept. 1973
7,500
(29,000)
Dec. 1973
39,000
10,000 *129 Respondent determined that because Citizens "permitted * * * [petitioner] to use corporate funds without compensation," the $15,000 received by petitioner from Citizens in March 1973 was a property distribution taxable as a dividend to petitioner under sections 301 and 316. [4] Petitioner argues to the contrary, contending that the $15,000 in dispute was both a repayment of an earlier loan made by him ($2,000) and a newly created loan to him ($13,000). Pursuant to his instructions, Citizens' books reflected his characterization of these transactions. However, the record contains no written loan agreement, note, repayment schedule, security agreement or other written evidence of a debt obligation. Nor did either party to these transactions demand, collect, record, pay or accrue interest, obtain collateral, or in any other manner formalize a loan transaction. For Citizens' short taxable period ended April 30, 1973, it reported taxable income of $20,940.42 and paid tax thereon of $4,518.69. Accordingly, its earnings and profits for the period were *130 $16,421.73. Citizens did not formally declare or pay a dividend to petitioner at any time in 1972 or 1973. The only issue is how properly to characterize for tax purposes the $15,000 withdrawn by petitioner from Citizens in March 1973: Was it a constructive dividend, includable in petitioner's gross income under sections 61(a)(7) and 301(a) and (c), [5] or was it a loan and a repayment of a loan and, thus, not taxable? Cf. . Citizens had earnings and profits in excess of $15,000 as of April 30, 1973, the end of its taxable year. That is sufficient to quantify the entire amount received by petitioner as a "dividend," if it were a "distribution of property" with respect to its stock paid to Citizens' stockholder. Section 316(a)(2). [6]
*131 Whether a corporate payment to a sole stockholder is a dividend or a loan is a question of fact upon which petitioner has the burden of proof. , affg. a Memorandum Opinion of this Court; [7] Rule 142(a). We must look to all the surrounding circumstances, and apply special scrutiny because petitioner exercised unfettered control over Citizens' activities. , affd. . Under section 61(a)(7), gross income includes the receipt of any dividend. There is no requirement that the dividend be formally declared or even intended by the corporation. . Accordingly, it is well-settled that the personal use of corporate property by a shareholder and expenditures made by a corporation for the personal benefit of a shareholder are constructive distributions to the shareholder in amounts equal to the fair value of the benefits involved. See ; *132 . See also . The test for constructive dividend is two-fold: The corporation must have conferred an economic benefit on the shareholder without expectation of repayment, , and the company-provided benefit must primarily advance the shareholder's personal interest as opposed to the business interests of the corporation. ; . Whether the advance was a loan or a dividend depends upon the intent at the time the advances were made to him. To support a finding that the advance was a loan, petitioner must satisfy a subjective test of showing that the parties intended to create a bona fide indebtedness, which the petitioner intended to repay and Citizens intended to collect. , affg. a Memorandum Opinion of this Court; , *133 affg. . [8]
From the facts in the record of this case, it is clear that there is no written unconditional promise by petitioner to pay on demand or on a specified date a sum certain in money in return for an adequate consideration in money or money's worth and to pay a fixed rate of interest; nor was there any collateral or security. It was stipulated that the money which petitioner paid to Citizens was made subordinate to other claims by lending banks with whom Citizens was deadling. So far as the record here discloses, there was nothing paid in for the stock of the corporation during the fiscal year ended April 30, 1973; the ratio of debt to equity, therefore, would be extreme in 1973. There is nothing in the record here to show that actual stock was ever issued to anyone. Also, we note the case of *134 In that case a person who was the corporate president and in complete control of the corporation received a promissory note from the controlled company. The issue was whether the note evidenced a valid indebtedness. This Court held that it did not, finding that the shareholder did not intend ever to enforce payment from the corporation if it would inconvenience the corporation. That same principle would also apply here. Petitioner's testimony shows that he advanced funds to Citizens when the corporation needed funds to operate its business and withdrew funds from Citizens when he needed the funds for his own personal use and the company did not need them. Such testimony further shows that petitioner expected repayments of the funds advanced by him to the corporation only if its business were successful, a conditional obligation at best. Moreover, petitioner had not intended to contribute to Citizens during the 1973 calendar year amounts equal to the amount of monies he had withdrawn from it; this was simply a coincidence and occurred by accident and not deliberately. Viewing this record as a whole, we are forced to the conclusion that petitioner never intended that the funds *135 flowing to him from Citizens absolutely were to be repaid by him at any time. We glean from the record that petitioner, with legal training, very carefully skirted and avoided any written evidence to categorize absolutely the nature of the money moving between him and Citizens. Rather, he sought to leave the situation as fluid as possible to permit him, in his own best judgment, to take whatever position he deemed appropriate at some undefined future time. His admission that he would withdraw funds anytime from the corporation if needed by him coupled with his control, requires the conclusion that no really hard and fixed relationship was ever intended. It stretches our credulity to visualize petitioner under the facts herein ever taking enforcement action on his "loan" against his controlled corporation. Moreover, we have some reservations about petitioner's sincerity in light of his instructions to the accountant with respect to the cooperative apartment stock and his persistence in having that fiction perpetuated in the corporation's records. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted. All Rules references are to the Tax Court Rules of Practice and Procedure. ↩
2. Pursuant to the authority of the "otherwise provided" language of Rule 182, the post-trial procedures set forth in that rule are not applicable to this case.↩
3. In the stipulation of facts, respondent did not concede that the term "Transferred" had any legal significance, thus apparently intending to challenge the substantiation of the book entries. But in respondent's brief, there is no such challenge and respondent has conceded that funds actually moved between petitioner and Citizens.↩
4. Respondent has not asserted that any of the other payments from Citizens to petitioner were distributions under sec. 301.↩
5. SEC. 301. DISTRIBUTIONS OF PROPERTY. (a) In General.--Except as otherwise provided in this chapter, a distribution of property (as defined in section 317(a)) made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in subsection (c). (c) Amount Taxable.--In the case of a distribution to which subsection (a) applies-- (1) Amount constituting dividend.--That portion of the distribution which is a dividend (as defined in section 316) shall be included in gross income. (2) Amount applied against basis.--That portion of the distribution which is not a dividend shall be applied against and reduce the adjusted basis of the stock. (3) Amount in excess of basis.-- (A) In general.--Except as provided in sub-paragraph (B), that portion of the distribution which is not a dividend, to the extent that it exceeds the adjusted basis of the stock, shall be treated as gain from the sale or exchange of property. (B) Distributions out of increase in value accrued before March 1, 1913.--That portion of the distribution which is not a dividend, to the extent that it exceeds the adjusted basis of the stock and to the extent that it is out of increase in value accrued before March 1, 1913, shall be exempt from tax. ↩
6. SEC. 316. DIVIDEND DEFINED. (a) General Rule.--For purposes of this subtitle, the term "dividend" means any distribution of property made by a corporation to its shareholders-- (1) out of its earnings and profits accumulated after February 28, 1913, or (2) out of its earnings and profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. Except as otherwise provided in this subtitle, every distribution is made out of earnings and profits to the extent thereof, and from the most recently accumulated earnings and profits. To the extent that any distribution is, under any provision of this subchapter, treated as a distribution of property to which section 301 applies, such distribution shall be treated as a distribution of property for purposes of this subsection.↩
7. .↩
8. Sec. 385 authorizes the promulgation of regulations for determining whether an interest in a corporation is in the nature of indebtedness or equity, and suggests certain factors to be considered. However, as of the date of this opinion, final regulations have not been promulgated.↩